■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILLIP SANCHEZ, True Name FELIX SANCHEZ, Appellant. [629 NYS2d 215] —Judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered March 11, 1992, convicting defendant, after jury trial, of murder in the second degree, attempted murder in the first degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, and sentencing him, as a second felony offender, to consecutive terms of 25 years to life on the

second degree murder and attempted first degree murder counts, and to concurrent terms of $7^{1}/_{2}$ to 15 years on the second degree weapon count, and $3^{1}/_{2}$ to 7 years on the third degree weapon count, to be served concurrently with the attempted murder count, unanimously affirmed.

The hearing court properly found that the police acted appropriately in stopping the vehicle in which defendant was a passenger, based upon a reasonable suspicion of criminal activity in that the vehicle appeared to match a radioed description of a vehicle utilized as a getaway car by two armed individuals involved in a recent shooting incident only blocks away (see, People v De Bour, 40 NY2d 210). In this connection, although the radioed description indicated that the van was white or silver, the trial court noted that the car (in fact, light blue) appeared to be white in the photograph entered into evidence. Police observation of an individual in the car who matched the radioed description of one of the perpetrators provided a reasonable suspicion that at least one of the two occupants of the van had been involved in the shooting (see, People v Hicks, 68 NY2d 234, 238). In these circumstances, the police acted reasonably in removing the occupants from the car for safety reasons (People v Harris, 160 AD2d 515, 517, lv denied 76 NY2d 789), and upon observing a handgun in plain view between the front bucket seats of the car, the officers had probable cause for defendant's arrest.

The record belies defendant's claim that he was denied Rosario material in the form of prior recorded statements of police officers involved in the shooting incident allegedly made to New York Police Department Health Services personnel, as affidavits of the personnel involved provided to the trial court indicate that no such statements exist.

Defendant did not preserve by appropriate and timely objection his current claim that he was prejudiced by an alleged delay in delivery of a transcript of audiotapes of statements made by the first police officers on the scene (CPL 470.05; People v Saunders, 174 AD2d 700, 701). In any event, we note that defendant was offered the opportunity to duplicate the audiotapes in question prior to the suppression hearing held in this case, as part of the discovery procedure.

The trial court properly admitted the audiotaped radio transmissions of the police officers at the shooting scene, on the grounds that they constituted excited utterances (People v Nieves, 67 NY2d 125, 135), and present sense impressions (People v Brown, 80 NY2d 729, 736), which were highly probative of the disputed issue of whether or not there was a second

shooter (*see, People v Caviness*, 38 NY2d 227, 231). That the audiotapes corroborated the testimony of certain of the People's witnesses, including the officers in question, all of whom were subject to cross-examination by the defense, did not render the tapes inadmissible (*supra*, at 232).

Defendant did not object to the brief police testimony that the first officers to arrive at the scene were not prosecuted in connection with the shooting of one of the perpetrators of the murder and thus did not preserve his current bolstering claim (CPL 470.05). In any event, as defendant's cross-examination of the officers in question explored the subject of police and Grand Jury investigation into the circumstances of the shots fired by the officers, the redirect testimony in question was proper to " 'explain, clarify and fully elicit' " the issues only partially explored on cross-examination (*People v Melendez*, 55 NY2d 445, 451).

The trial court properly denied defendant's application for dismissal of a sitting juror, upon determining that the juror in question had heard only a brief comment made by defense counsel to an associate in the courtroom corridor. As that juror assured the court that she would disregard the comment and allow it to play no part in deliberations, there is nothing in the record to suggest that the juror in question possessed a state of mind which would prevent the rendering of an impartial verdict (*People v Buford*, 69 NY2d 290, 298).

We note that defense counsel explicitly moved to waive defendant's presence at the charge conference, and the court ascertained that the waiver was at defendant's request. In any event, defendant's presence at the charge conference was not required, as such conference involved "only questions of law or procedure" (*People v Velasco*, 77 NY2d 469, 472).

Viewed in the context of the defense summation arguing that the police had falsely accused defendant in order to cover up misconduct on their part, that the police investigation of the case was geared to efforts to protect the officers, and that the jury should focus on the lack of evidence against defendant, the prosecutorial summation comments complained of by defendant constitute appropriate response (*see, People v Marks*, 6 NY2d 67, *cert denied* 362 US 912), and fair comment on the evidence presented within the broad bounds of rhetorical comment permissible in closing argument (*People v Galloway*, 54 NY2d 396).

A review of the record belies defendant's *pro se* claim of ineffective assistance of counsel.

We perceive no abuse of discretion in sentencing and note

that the imposition of consecutive sentences on the murder and attempted murder counts is lawful as neither crime constituted a material element of the other (*see, People v Brathwaite*, 63 NY2d 839, 843). Concur—Sullivan, J. P., Rosenberger, Kupferman, Ross and Williams, JJ.