◾ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL DELVILLARTRON, Appellant. [992 NYS2d 363]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Zayas, J.), rendered June 18, 2012, convicting him of burglary in the second degree and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court (Kohm, J.), dated March 15, 2011, which, upon reargument, adhered to a prior determination in an order of the dated January 7, 2011, denying, after a hearing (Cooperman, J.H.O.), that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, upon reargument, that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials is granted, the count of the indictment charging the defendant with criminal possession of stolen property in the third degree is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings on the count of the indictment charging the defendant with burglary in the second degree.

We agree with the defendant that the evidence was legally insufficient to prove his guilt of criminal possession of stolen property in the third degree (*see People v Spencer*, 257 AD2d 638, 638 [1999]; *cf. People v Fecunda*, 150 AD2d 600, 601 [1989]). There was no evidence supporting a conclusion that the defendant ever possessed the stolen property himself or acted in concert with the codefendants Kenneth Myers and Kevin Santos in their possession of the stolen property. Although the defendant's claim as to this count is unpreserved for appellate review, we reach it in the exercise of our interest of justice jurisdiction (*see* CPL 470.15 [3] [c]; *People v Curry*, 101 AD3d 743, 744 [2012]).

The defendant's contention that the evidence was legally insufficient to prove his guilt of burglary in the second degree is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Pitre*, 108 AD3d 643, 643 [2013]; *People v Cabrera*, 85 AD3d 942, 942 [2011]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt of that crime (*see People v Bacote*, 107 AD3d 641, 641

[2013]; *People v Horsey*, 304 AD2d 852, 853-854 [2003]; *People v Anaya*, 206 AD2d 380, 381 [1994]; *People v Poppel*, 143 AD2d 854 [1988]; *cf. People v Taylor*, 141 AD2d 581, 581-582 [1988]). Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Delamota*, 18 NY3d 107, 116-117 [2011]; *People v Romero*, 7 NY3d 633 [2006]; *People v Medina*, 37 AD3d 240, 241 [2007]).

Despite the sufficiency of the evidence regarding the conviction of burglary in the second degree, reversal of the defendant's conviction on that count is required, because, upon reargument, the court should have granted that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials. The hearing testimony established that at approximately 8:00 a.m. on June 10, 2009, the police received a radio transmission regarding a robbery in progress, perpetrated by two black males, at a Queens residence. The police activated their sirens and lights and went to the specified house, arriving within two minutes of receiving the transmission. When the police arrived, two of the complainants, still gagged and partially bound, were on the porch of the house. The complainants used gestures to direct the officers' attention to two men, Myers and Santos, who were walking on the sidewalk, about four houses away. Myers and Santos, who were the only civilians on the block, started running, and the officers chased them. During the chase, Santos discarded an object, which the police later recovered and found to be a gun. When Myers and Santos turned a corner several blocks from the complainants' house, the officers lost sight of them briefly. When one of the officers turned the corner, he did not see any people, but saw the rear passenger door on a sport utility vehicle being closed. The vehicle was legally parked and the engine was off. The officer ran to the vehicle and peered inside through the tinted windows. After spotting Myers and Santos in the rear passenger seat, the officer "punched" the driver's side window to alert the driver not to drive away. The officer pulled the driver's door open and saw the defendant in the driver's seat, "fumbling" with the keys and trying to put them in the ignition. The officer pulled the defendant out of the car, placed him face-down on the ground, and handcuffed him. Eventually, the defendant was placed in a police car. At some point, one of the complainants, who had arrived at the scene of the arrest, happened to look into the police car and recognized the defendant as an acquaintance of his girlfriend. The defendant was later taken to the precinct, where, after being advised of his rights, he made inculpatory statements.

The judicial hearing officer (hereinafter the JHO) recommended denial of the defendant's motion to suppress his statements under *Dunaway v New York* (442 US 200 [1979]). The JHO concluded that, under the circumstances, the police had reasonable suspicion to forcibly detain the defendant and conduct a brief investigation. Further, the JHO concluded that the police had probable cause to arrest the defendant when he was recognized by one of the complainants as an acquaintance of his girlfriend. The Supreme Court adopted the JHO's findings of fact and conclusions of law, and denied suppression. The defendant moved for leave to reargue his motion, and the Supreme Court granted reargument, but adhered to its initial determination.

The evidence at the suppression hearing established that, under the circumstances, the police had probable cause to arrest Myers and Santos when the complainants pointed at them upon the arrival of the police (*see People v Collado*, 169 AD2d 531, 531-532 [1991]). Additionally, based on the presence of Myers and Santos in the defendant's car after those two men fled, the police reasonably suspected that the defendant was involved in the crime as a getaway driver (*see People v Sanchez*, 216 AD2d 207, 207 [1995]; *People v Gianfrate*, 192 AD2d 970, 971 [1993]). Given this reasonable suspicion, the police were permitted to forcibly stop the defendant and detain him briefly for investigative purposes (*see People v Moore*, 6 NY3d 496, 498-499 [2006]), but they did not have probable cause to arrest him at that juncture (*see People v Shulman*, 6 NY3d 1, 25-26 [2005]). When the police first encountered the defendant, he was sitting in the driver's seat of a lawfully parked car with the engine off and the keys not in the ignition, a full avenue away from, and not within sight of, the complainants' house. The defendant did not resist the police in any way and there was no evidence that he attempted or intended to evade them. The fact that the defendant fumbled with his keys in trying to place them in the ignition did not elevate reasonable suspicion to probable cause, because that behavior was innocuous. Under the circumstances known to the police at that point, it was just as likely that the defendant was not complicit in Myers's and Santos's criminal activity as that he was a getaway driver (*see People v Vandover*, 20 NY3d 235, 237 [2012]; *People v Carrasquillo*, 54 NY2d 248, 254 [1981]; *People v Cash J.Y.*, 60 AD3d 1487, 1488-1489 [2009]; *People v Wade*, 143 AD2d 703, 705 [1988]; *cf. People v Bernier*, 245 AD2d 137, 137 [1997]).

The hearing record established, however, that even if the defendant was not under arrest when he was first taken out of his

car and handcuffed, he was certainly under arrest by the time the police transferred him to a police car (*see People v Brnja*, 50 NY2d 366, 372 [1980]; *People v Hairston*, 117 AD2d 618, 620 [1986]). Since that arrest was not supported by probable cause, the resulting inculpatory statements at the precinct should have been suppressed. Moreover, inasmuch as the evidence of the defendant's guilt without regard to his inculpatory statements was not overwhelming, there is no basis for consideration of the harmless error doctrine (*see People v Crimmins*, 36 NY2d 230, 237 [1975]).

The People's remaining contention is without merit.

We need not address the defendant's remaining contentions, which have been rendered academic in light of our determination. Balkin, J.P., Austin and Barros, JJ., concur.

LaSalle, J., concurs in part and dissents in part and votes to modify the judgment with the following memorandum: I agree with majority to the extent that they hold that the evidence was legally insufficient to prove the defendant's guilt of criminal possession of stolen property in the third degree. However, I respectfully dissent, and vote to modify the judgment, because I conclude that the police officer had probable cause to arrest the defendant for the crime of burglary in the second degree.

The events leading to the defendant's arrest are not in substantial dispute. On June 10, 2009, at approximately 8:00 a.m., the police received a radio transmission of an armed robbery in progress at a residence, perpetrated by two black males. Police officers arrived at the location of the home invasion within minutes of the radio transmission. Upon the officers' arrival at the residence, they observed two of the complainants on the porch, still gagged and partially bound. The complainants used gestures to direct the officers' attention to two men, later identified as Kenneth Myers and Kelvin Santos, who were walking on the sidewalk. Myers and Santos starting running, and three of the police officers, including Officer Soto, chased them. During the chase, Santos discarded an object which Officer Soto observed to be a gun when he ran past it, but Officer Soto did not stop to retrieve the gun at that time. Myers and Santos turned a corner, and Officer Soto lost sight of them for two to three seconds. Upon turning the corner, Officer Soto observed no one on the street, but saw a rear door to a vehicle being closed. Officer Soto approached the vehicle, and saw Myers and Santos in the back seat. Officer Soto approached the driver's side door, and observed the defendant fumbling with the car keys and attempting to put the key in the ignition. Officer Soto opened the driver's side door, pulled the defendant out, laid him

on the ground, and handcuffed him. Myers was handcuffed by another officer. Santos started running again, but was soon apprehended and taken into custody. The defendant was placed in the police car. Later, one of the complainants arrived at the scene of arrest, observed the defendant in the police car, and indicated that he recognized him as an acquaintance of his girlfriend. The defendant was subsequently taken to the precinct where, after being advised of his rights, he made inculpatory statements.

The issue presented in this case is whether Officer Soto had probable cause to arrest the defendant. I disagree with the majority, and would hold that under the undisputed facts and circumstances of the case, probable cause existed to arrest the defendant.

"Probable cause to arrest requires the existence of facts and circumstances which, when viewed as a whole, would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed, and that the defendant committed or is committing that offense" (*People v Wright*, 8 AD3d 304, 306 [2004]; *see People v Bigelow*, 66 NY2d 417, 423 [1985]; *People v Capela*, 97 AD3d 760, 760-761 [2012]). When determining whether a police officer has probable cause for an arrest, "the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents" (*People v Bothwell*, 261 AD2d 232, 234 [1999] [internal quotation marks omitted]; *see People v Graham*, 211 AD2d 55, 58 [1995]; *People v Cabot*, 88 AD2d 556, 557 [1982]; *People v Wright*, 8 AD3d at 307). A determination of whether probable cause existed for an arrest is to be made "after considering all of the facts and circumstances together . . . Viewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause found" (*People v Bigelow*, 66 NY2d at 423).

In this case, an evaluation of the totality of the circumstances fully supports the conclusion that probable cause existed for Officer Soto to arrest the defendant. After responding to a call for an armed robbery in progress, Officer Soto and his fellow officers found two individuals bound and gagged gesturing toward Myers and Santos, who began to flee on foot. Officer Soto observed Santos discard an object, which he moments later observed to be a handgun. Myers and Santos then entered the rear of a nearby vehicle, and Officer Soto observed the defendant fumbling with the keys, attempting to put them in the ignition.

Contrary to the conclusion of the majority, in evaluating the totality of the circumstances, I do not believe the defendant's behavior can be viewed as "innocuous." Indeed, in my view, the totality of the facts and circumstances would lead a reasonable person possessing the same expertise as the arresting officer to conclude that the defendant was acting in concert with Myers and Santos, in attempting to assist them to flee the scene of the home invasion (*see People v Wright*, 8 AD3d at 307; *People v Attebery*, 223 AD2d 714, 715 [1996]). Therefore, I would hold that the hearing court properly determined that there was probable cause for the defendant's arrest, and no basis to suppress his statements to law enforcement officials.

Accordingly, because I conclude that there was probable cause for the defendant's arrest, and because I determine the defendant's remaining contentions, apart from the contention that the evidence was legally insufficient to prove his guilt of criminal possession of stolen property in the third degree, are without merit, I would vote to modify the judgment, as a matter of discretion in the interest of justice, by vacating the conviction of criminal possession of stolen property in the third degree and the sentence imposed thereon, and to dismiss that count of the indictment.